1

2

3

4

5

6

7

8

9          UNITED STATES DISTRICT COURT

10          EASTERN DISTRICT OF CALIFORNIA

11

12   DEMARCUS GIVAN,                        No. 1:16-cv-01019-DAD-SKO HC

13                Petitioner,

14        v.                                **FINDINGS AND RECOMMENDATIONS
                                           TO DENY PETITION FOR WRIT OF**
15   K. SANTORO, Warden,                    **HABEAS CORPUS AND DECLINE TO
                                           ISSUE CERTIFICATE OF**
16                Respondent.               **APPEALABILITY**

17                                          **(Doc. 1)**

18

19

20          Petitioner, DeMarcus Givan, is a state prisoner proceeding *pro se* with a petition for writ of

21   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner alleges two grounds for habeas relief: (1)

22   jury instruction error and (2) ineffective assistance of counsel.  The Court referred the matter to the

23   Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304.  Having reviewed

24   the record as a whole and applicable law, the undersigned recommends that the Court deny the

25   habeas petition.

26

27

28

                                              1

## I.    <u>Factual and Procedural Background</u>[1]

On January 22, 2012, Petitioner was driving in excess of the speed limit, ran a red, light and struck a vehicle driven by Tommy Fulce ("Tommy"). Tommy's wife Laura Fulce ("Laura") was also in the car at the time of the accident. Laura died and Tommy sustained major injuries. Petitioner's passenger, Eric Bender, also sustained injuries.

When police officers responded to the accident and spoke to Petitioner, they found he had red, watery eyes and a faint odor of alcohol emanated from him. Petitioner did not seem rational or coherent when speaking to officers at the scene. Approximately one hour after the accident, Petitioner had a blood-alcohol level of 0.17 percent.

On July 25, 2012, the Kern County District Attorney filed an information charging Petitioner with gross vehicular manslaughter while intoxicated (Cal. Penal Code § 191.5(a)); driving under the influence and causing bodily injury (Cal. Veh. Code §23153(a); and driving with an excessive blood-alcohol level causing injury (Cal. Veh. Code § 23153(b)). The information further alleged Petitioner caused great bodily injury to more than one victim (Cal. Veh. Code § 23558); had a blood-alcohol level of 0.15 percent or more (Cal. Veh. Code § 23578); had been previously convicted of six felonies (Cal. Penal Code §§ 667(c)-(j); 1170.12(a)-(e)); inflicted great bodily injury on a victim older than 70 years of age (Cal. Penal Code § 12022.7(c)); and each count was a serious felony (Cal. Penal Code § 1192.7(c)(8)).

At trial, Petitioner testified on his own behalf and stated he drank for about two or three hours on the night before the accident. He drank Hennessy mixed with a Monster Energy drink and ice.

---

[1] The factual background, taken from the opinion of the California Court of Appeal, Fifth Appellate District, *People v. Givan*, 233 Cal. App. 4th 35 (2015), is presumed to be correct. 28 U.S.C. § 2254(e)(1).

Dr. Robert Allen Bexton ("Dr. Bexton") provided expert testimony regarding how Monster Energy drinks affect the body in combination with alcohol consumption. Dr. Bexton opined the substances in a Monster Energy drink can affect the drinker physiologically by delaying the effects of alcohol. The ingredients delay the passage of the alcohol from the stomach to the intestine, sometimes by as much as six hours. The rate of absorption of the alcohol in the intestines to the blood stream also decreases. The absorption of alcohol can be even slower for those who smoke. Dr. Bexton testified scientific evidence shows the motor skills of a driver who ingest alcohol with the ingredients from a Monster Energy drink are superior compared to those of a person who ingests alcohol alone. The ingredients in Monster Energy drinks contain stimulants that counteract alcohol, a depressant, which reduces a drinker's awareness of how alcohol is affecting the drinker.

During closing arguments, defense counsel made the following relevant comments regarding Dr. Bexton's testimony:

> The whole point of [Dr. Bexton's] discussion was to say, even if [you] have this high blood alcohol level, assuming it was at the time of this incident, . . . would you have been aware of it, and would these ingredients perhaps have affected your physiological reactions. That was the question.

> And his answer was it may have masked the fact that you would have perceived that you were impaired. That was one answer.

> So if you are hiked up on whatever – the stimulants, the caffeine, the sugar, the L-Tartrate and the L-Carnitine and the ginseng, these things, because they are stimulants, may have prevented a person from recognizing any other impairments.

> [Dr. Bexton] didn't necessarily say you wouldn't be impaired. He said you may not have seen them. And if you are not aware you are impaired, then the question is: Can you be acting grossly negligent if you do something?

On January 23, 2013, a jury found Petitioner guilty on all counts, and found true all allegations. The trial court found true the allegation Petitioner had been previously convicted of five felonies.

3

On February 27, 2013, Petitioner filed a motion to strike his prior convictions pursuant to California Penal Code § 1385,[2] which the trial court denied at the sentencing hearing on March 1, 2013. For vehicular manslaughter, Petitioner was sentenced to 25 years to life, plus a one-year enhancement (Cal. Veh. Code § 23558), plus a five-year enhancement (Cal. Penal Code § 12022.7(c)), plus a one-year enhancement (Cal. Veh. Code § 23558) stayed pursuant to Penal Code § 654.[3] The court stayed sentences on his convictions for driving under the influence and driving with an excessive blood-alcohol level causing injury.

On January 20, 2015, the Court of Appeal for the Fifth Appellate District ("Court of Appeal") affirmed Petitioner's conviction. The California Supreme Court denied review on April 15, 2015. On September 14, 2015, Petitioner filed a petition for writ of habeas corpus with the Kern County Superior Court, which was denied on December 7, 2015. On January 4, 2016, Petitioner filed a petition with the Court of Appeal, which was denied on May 2, 2016. On May 16, 2016, Petitioner filed a petition with the California Supreme Court, which was denied on June 22, 2016.

On July 15, 2016, Petitioner filed his petition for writ of habeas corpus before this Court. Respondent filed a response on November 10, 2016.

## II.    Standard of Review

A person in custody as a result of the judgment of a state court may secure relief through a petition for habeas corpus if the custody violates the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000). On April 24, 1996,

---

[2] California Penal Code § 1385(a) provides: "The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in the furtherance of justice, order an action to be dismissed."
[3] California Penal Code § 654(a) provides:

> An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.

4

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed thereafter. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997). Under the statutory terms, the petition in this case is governed by AEDPA's provisions because it was filed April 24, 1996.

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of the merits of a guilty verdict rendered in state court. *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring). Habeas corpus relief is intended to address only "extreme malfunctions" in state criminal justice proceedings. *Id.* Under AEDPA, a petitioner can obtain habeas corpus relief only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams*, 529 U.S. at 413.

"By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

As a threshold matter, a federal court must first determine what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." *Lockyer*, 538 U.S. at 71. In doing so, the Court must look to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state-court decision. *Id.* The court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.* at 72. The state court need not have cited clearly established Supreme Court precedent; it is sufficient that neither the reasoning nor the

5

result of the state court contradicts it. *Early v. Packer*, 537 U.S. 3, 8 (2002). The federal court must apply the presumption that state courts know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). The petitioner has the burden of establishing that the decision of the state court is contrary to, or involved an unreasonable application of, United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

"A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, 538 U.S. at 75-76. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, the AEDPA standard is difficult to satisfy since even a strong case for relief does not demonstrate that the state court's determination was unreasonable. *Harrington*, 562 U.S. at 102.

### III.     Errors in Jury Instructions Do Not Present Cognizable Federal Claims

In his first ground for habeas relief, Petitioner contends the trial court erred by refusing to instruct on a "mistake of fact" defense. (Doc. 1 at 6.) Respondent counters that the state court's failure to instruct on a "mistake of fact" defense does not present a cognizable federal question. (Doc. 17 at 10.)

### A.  Federal Habeas Review of Jury Instruction errors

Generally, claims of instructional error are questions of state law and are not cognizable on federal habeas review. "It is not the province of a federal court to reexamine state court determinations of state law questions." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). "The fact that a jury instruction violates state law is not, by itself, a basis for federal habeas corpus relief." *Clark v. Brown*, 450 F.3d 898, 904 (9th Cir. 2006). "[A] petitioner may not "transform a state-law

issue into a federal one merely by asserting a violation of due process." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1997).

To prevail in a collateral attack on state court jury instructions, a petitioner must do more that prove that the instruction was erroneous. *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). Instead, the petitioner must prove that the improper instruction "by itself so infected the entire trial that the resulting conviction violated due process." *Estelle*, 502 U.S. at 72. Even if there were constitutional error, habeas relief cannot be granted absent a "substantial and injurious effect" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

A federal court's review of a claim of instructional error is highly deferential. *Masoner v. Thurman*, 996 F.2d 1003, 1006 (9th Cir. 1993). A reviewing court may not judge the instruction in isolation but must consider the context of the entire record and of the instructions as a whole. *Id.* The mere possibility of a different verdict is too speculative to justify a finding of constitutional error. *Henderson*, 431 U.S. at 157. "Where the jury verdict is complete, but based upon ambiguous instructions, the federal court, in a habeas petition, will not disturb the verdict unless 'there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Solis v. Garcia*, 219 F.3d 922, 927 (9th Cir. 2000) (quoting *Estelle*, 502 U.S. at 72).

Even when the trial court has made an error in the instruction, a habeas petitioner is only entitled to relief if the error "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). A state prisoner is not entitled to federal habeas relief unless the instructional error resulted in "actual prejudice." *Brecht*, 507 U.S. at 637. A violation of due process occurs only when the instructional error results in the trial being fundamentally unfair. *Estelle*, 502 U.S. at 72-73; *Duckett v. Godinez*, 67 F.3d 734, 746 (9th Cir. 1995). If the court is convinced that the error did not influence the jury, or had little effect, the judgment should stand. *O'Neal v. McAninch*, 513

U.S. 432, 437 (1995).

### B. State Court of Appeal Opinion

The Court of Appeal found the trial court did not err in failing to *sua sponte* instruct on a mistake of fact defense. *People v. Givan*, 233 Cal. App. 4th 335, 343 (2015). Before the Court of Appeal, Petitioner argued he presented a mistake of fact defense "through [Dr.] Bexton's testimony by contending [Petitioner's] ingestion of Monster Energy drinks masked his ability to perceive alcohol impairment and gauge the level of alcohol in his blood." *Id*. Petitioner maintained that because "he presented this defense in his-case-in-chief and his counsel argued it at closing, the trial court should have instructed the jury sua sponte on the defense of mistake of fact." *Id*.

In his appeal before the Court of Appeal, Petitioner cited to CLACRIM No. 3406 for a mistake of fact jury instruction, which provides:

> The defendant is not guilty of _____ <*insert crime[s]*> if (he/she) did not have the intent or mental state required to commit the crime because (he/she) [reasonably] did not know a fact or [reasonably and] mistakenly believed a fact.
>
> If the defendant's conduct would have been lawful under the facts as (he/she) [reasonably] believed them to be, (he/she) did not commit _____ <*insert crime[s]*>.
>
> If you find that the defendant believed that _____ <*insert alleged mistaken facts*> [and if you find that belief was reasonable], (he/she) did not have the specific intent or mental state for _____ <*insert crime[s]*>
>
> If you have a reasonable doubt about whether the defendant had the specific intent or mental state required for _____ <*insert crime[s]*>, you must find (him/her) not guilty of (that crime/those crimes). (fn3)
>
> > fn3 The bench notes to CALCRIM No. 3406 states, in relevant part: "If the defendant is charged with a general intent crime, the trial court must instruct with the bracketed language requiring that defendant's belief to be both actual and reasonable."

*Id*. at 344-45. The Court of Appeal used this instruction in its analysis. *Id*. at 345.

The Court of Appeal held:

In Count 1, [Petitioner] was convicted of gross vehicular manslaughter while intoxicated. ([Cal.] Pen. Code § 191.5, subd. (a.).) That provision states in pertinent part: "Gross vehicular manslaughter while intoxicated is the unlawful killing of a human being without malice aforethought, in the driving of a vehicle, where the driving was in violation of Section . . . 23153 of the Vehicle Code, and the killing was either the proximate result of the commission of an unlawful act, not amounting to a felony, and with gross negligence, or the proximate result of the commission of a lawful act that might produce death, in an unlawful manner, and with gross negligence." (*Ibid.*)

The Supreme Court has noted Penal Code section 191.5, subdivision (a), involves gross negligence, which applies an *objective* standard: Whether a reasonable person in defendant's position would have been aware of the risks involved. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1204, 26 Cal.Rptr.2d 23, 864 P.2d 103 (*Ochoa*).) Gross negligence is "'the exercise of so slight a degree of care as to raise a presumption of conscious indifference to the consequences. [ ] "The state of mind of a person who acts with conscious indifferences to the consequences is simply, 'I don't care what happens.'" [ ]'" (*Ibid.*, quoting *People v. Bennett* (1991) 54 Cal.3d 1032, 1036, 2 Cal.Rptr.2d 8, 819 P.2d 849.) The Supreme Court has noted a defendant's lack of awareness does not prevent a finding of gross negligence if a reasonable person would have been aware of the dangers presented. (*Ochoa, supra,* at p. 1205, 26 Cal.Rptr.2d 23, 864 P.2d 103; see *People v. Watson,* (1981) 30 Cal.3d 290, 296, 179 Cal.Rptr. 43, 637 P.2d 279 ["if a *reasonable person* in [the] defendant's position would have been aware of the risk involved, then [the] defendant is presumed to have had such an awareness"]; *People v. Medlin* (2009) 178 Cal.App.4th 1092, 1103, 100 Cal.Rptr.3d 810 [the "defendant's subjective awareness" is not relevant when analyzing criminal negligence]; *People v. Lara* (1996) 44 Cal.App.4th 102, 108, 51 Cal.Rptr.2d 402 ["Where liability may be imposed based on 'criminal negligence,' the defendant's subjective belief or good faith is irrelevant."].)

[Petitioner] cites no legal authority for the proposition he was entitled to a mistake of fact jury instruction specifically for involuntary manslaughter while intoxicated or generally for criminal negligence. In contrast, this court's decision in *Velez, supra,* 144 Cal.App.3d 558, 192 Cal.Rptr. 686, is instructive regarding the proper refusal of a mistake of fact jury instruction in a matter involving criminal negligence.

. . .

Here, . . ., [Petitioner] faced criminal liability in count 1 under a gross negligence standard and his subjective belief, while relevant for the jury to consider in determining gross negligence, did not warrant a mistake of fact jury instruction. The Supreme Court has stated that although the test for gross negligence is objective the jury should consider all relevant circumstances to determine whether a defendant acted with mere inadvertence or had a conscious disregard of the

consequences. (*Ochoa*, *supra*, 6 Cal.4th at p. 1205, 26 Cal.Rptr.2d 23, 864 P.2d 103; *People v. Bennett*, *supra*, 54 Cal.3d 1032, 1038, 2 Cal.Rptr.2d 8, 819 P.2d 849.) The jury's ability to hear evidence about [Petitioner's] state of mind does not alter the objective standard used to convict. As such, if [Petitioner] operated his vehicle intoxicated but believed he was not impaired, the jury could still convict him for gross negligence if the jury believed a reasonable person would have appreciated the risks. (*Ochoa*, *supra*, at p. 1204, 26 Cal.Rptr.2d 23, 864 P.2d 103.) Conversely, [Petitioner] cannot avoid liability under a mistake of fact defense simply because he held a mistaken belief about his level of impairment.

. . .

[Petitioner] could not avoid liability based on his subjective mistake of fact. . . . [Petitioner] was never entitled to a mistake of fact jury instruction in count 1 because his subjective intent or belief was not an element necessary for conviction. ([Cal.] Pen. Code, § 191.5, subd. (a); CALCRIM No. 3406; see *Ochoa*, *supra*, 6 Cal.4th at p. 1205, 26 Cal.Rptr.2d 23, 864 P.2d 103 [defendant's lack of awareness does not preclude gross negligence]; *Velez*, *supra*, 144 Cal.App.3d at pp. 565-566, 192 Cal.Rptr. 686.)

*Id*. at 345-348.

The Court of Appeal additionally found that Petitioner was not prejudiced by the court's decision to not instruct the jury as to mistake of fact. The jury was instructed on CALCRIM No. 592, which provides that "[g]ross negligence involves more than [ordinary] carelessness, inattention or *mistake in judgment*." *Id*. at 348 (emphasis added).

Thus, the jury was instructed to consider whether [Petitioner] committed gross negligence or not in light of his alleged mistake in judgment. In rendering its verdict, the jury rejected defendant's position.

Further, any alleged error in failing to give CALCRIM NO. 3406 was plainly harmless. Conviction of gross vehicular manslaughter under Penal Code section 191.5 requires more than showing [Petitioner] drove under the influence and violated traffic laws. Instead, the jury examines all relevant factors, "including the manner in which the defendant operated his vehicle, the level of his intoxication, and any other relevant aspects of his conduct." (*Ochoa*, *supra*, 6 Cal.4th at p. 1207, 26 Cal.Rptr.2d 23, 864 P.2e 103.) [Petitioner] did not suffer any prejudice from the alleged error in light of his high level of intoxication, his excessive speed just before impact, and his failure to see the red traffic light before entering the intersection. There is no reasonable probability the jury would have reached a more favorable verdict if the instruction had been given. (*People v. Watson* (1956) 46 Cal.2d 818, 836, 299 P.2d 243 (*Watson*); *Russell*, *supra*, 144 Cal.App.4th at p. 1431, 51 Cal.Rptr.3d 263 [erroneous failure to instruct on mistake of fact defense is subject to harmless error test set forth in *Watson*].)

*Id.* at 348-49.

Pursuant counts 2 and 3, Petitioner was convicted of driving under the influence and causing bodily injury (Cal. Veh. Code § 23153(a)) and driving with an excessive blood-alcohol level causing injury (Cal. Veh. Code § 23153(b)). For driving under the influence and causing bodily injury,

> [t]he elements necessary for conviction are as follows . . . the prosecutor must prove [defendant was] (1) driving a vehicle while under the influence of an alcoholic beverage or drug; (2) when so driving, committing some act which violates the law or is a failure to perform some duty required by law; and (3) as a proximate result of such violation of law or failure to perform a duty, another person was injured.

*Id.* at 349 (internal citations omitted).

Driving with an excessive blood-alcohol level causing injury has the same elements, "except for the first element is expressed as driving a vehicle while having 0.08 percent or more by weight of alcohol in his or her blood . . . ." *Id.*

> It is a general intent crime to violate Vehicle Code section 23153, subdivisions (a) or (b). (*People v. Mathson* (2012) 210 Cal.App.4th 1297, 1312-1313, 149 Cal.Rptr.3d 167; *People v. Butler* (1986) 184 Cal.App.3d 469, 474, 229 Cal.Rptr. 103.) Like in count 1, [Petitioner's] subjective intent or belief about his level of impairment was not an element necessary for conviction on count 2 or count 3. As such, [Petitioner] was not entitled to a mistake of fact jury instruction for those charges. (See *People v. Parker*, *supra*, 175 Cal.App.3d at pp. 821-823, 223 Cal.Rptr. 284 [mistaken belief burglarized building was not a residence was no defense because knowledge of its residential character was not required for first degree burglary]; *Velez*, *supra*, 144 Cal.App.3d at pp. 565-566, 192 Cal.Rptr. 686 [mistake of fact defense not permissible for involuntary manslaughter where the defendant had mistaken belief gun could not be fired]; *People v. Vineberg*, *supra*, 125 Cal.App.3d at pp. 135-136, 177 Cal.Rptr. 819 [the defendants, who were bailees of stored silver and gold, could not rely on mistake of fact as defense after selling silver and gold in speculative transactions because the defendants had no right to sell].)

> Further, for a general intent crime[,] any mistake of fact must be both reasonable and actual before it is presented to the jury. (*Lawson*, *supra*, 215 Cal.App.4th at p. 115, 155 Cal.Rptr.3d 236.) In contrast, an unreasonable mistake of fact may be asserted in a specific intent crime, or a crime involving knowledge, so long as the defendant had an actual mistaken belief. (*Ibid.*) The law generally does not find a mistake of fact reasonable when it is due to voluntary intoxication. (*See People v.*

*Geddes* (1991) 1 Cal.App.4th 448, 456, 1 Cal.Rptr.2d 886 [we question whether a mistake-of-fact defense is appropriately utilized where defendant's delusion are the product of mental illness and/or voluntary intoxication]; *People v. Gutierrez* (1986) 180 Cal.App.3d 1076, 1081, 225 Cal.Rptr. 885 [person who commits a crime while voluntarily drunk should not escape the consequences]; *People v. Scott* (1983) 146 Cal.App.3d 823, 832, fn. 4, 194 Cal.Rptr. 633 [mistake of fact defense not available if the defendant's delusions were caused by voluntary intoxication].)

Here, [Petitioner] voluntarily consumed alcohol along with an energy drink and drove a vehicle with a blood alcohol level of 0.17 percent (and likely higher). [Petitioner] believed he was okay to drive. We cannot say [Petitioner's] mistaken belief was reasonable because he voluntarily consumed alcohol and then drove a vehicle while legally impaired. [Petitioner], however, argues his mistaken beliefs were reasonable not because he consumed alcoholic beverages, but because he simultaneously consumed a nonalcoholic beverage that may have masked his impairment. This is a distinction without a difference. Whether he voluntarily consumed alcohol with or without an energy drink (or anything else that may have masked his impairment), [Petitioner] voluntarily ingested intoxicating liquor and then operated a vehicle. Thus, [Petitioner's] mistaken belief was not reasonable and could not have been used as a defense for any of his charges that did not involve specific intent knowledge. (*Lawson*, *supra*, 215 Cal.App.4th at p. 115, 155 Cal.Rptr.3d 236.)

Based on the above analysis, a mistake of fact jury instruction was not proper in this case for any of the charges. As such, the trial court had no sua sponte obligation to give such an instruction. (*People v. Hawthorne*, *supra*, 4 Cal.4th at p. 76, 14 Cal.Rptr.2d 133, 841 P.2d 118 [because a court "may refuse an instruction that misstates the law, it obviously has no sua sponte duty to misguide the jury"].) Thus, [Petitioner's] argument he was denied a constitutional right to present a defense is without merit. Because he has not established any error, [Petitioner] is not entitled to reversal of his convictions under either *Chapman v. California* (1967) 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705, or *Watson*, *supra*, 46 Cal.2d at page 836, 299 P.2d 243.

*Id*. at 349-351 (internal quotation marks omitted).

In sum, the Court of Appeal determined that driving under the influence and causing bodily injury and driving with an excessive blood-alcohol level causing injury are general intent crimes. For these types of crimes, a defendant must prove a mistake of fact must was reasonable. The Court of Appeal held that Petitioner could not show his asserted mistake of fact, consuming alcohol and driving while impaired, was reasonable; therefore, a mistake of fact instruction would not have been proper.

12

## C. The Court Did Not Err in Instructing the Jury

Petitioner contends the trial court should have *sua sponte* given a mistake of fact jury instruction because there was evidence supporting the instruction. (Doc. 1 at 6.)

The state court determined this instruction was not warranted under California law. This Court is bound by the state court's ruling on a question of state law. *Estelle*, 502 U.S. at 71-72. To obtain relief, Petitioner must show the alleged instructional error "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637 (quoting *Kotteakos*, 328 U.S. at 776). "A 'substantial and injurious effect' means a 'reasonable probability' that the jury would have arrived at a different verdict had the instruction been given." *Byrd v. Lewis*, 566 F.3d 855, 860 (9th Cir. 2009) (quoting *Clark*, 450 F.3d at 916). To determine if Petitioner was prejudiced, the Court will consider: "(1) the weight of evidence that contradicts the defense; and (2) whether the defense could have completely absolved the defendant of the charge." *Id.* (citing *Beardslee v. Woodford*, 358 F.3d 560, 578 (9th Cir. 2004). The burden on Petitioner "is especially heavy where . . . the alleged error involves the failure to give an instruction." *Id.* (quoting *Clark*, 450 F.3d at 904) (internal citations omitted).

Here, Petitioner bases his mistake of fact defense on the argument that he did not realize he was intoxicated because the energy drink he consumed masked his intoxication. "A mistake of fact defense requires, at a minimum, an actual belief in the existence of circumstances, which, if true, would make the act with which the person is charged an innocent act." *Givan*, 233 Cal. App. 4th at 343. A mistake of fact defense was not appropriate here, because as the Court of Appeal noted, Petitioner "could not avoid liability based on his subjective mistake of fact." *Id.* at 348. For the charge of gross vehicular manslaughter while intoxicated, Petitioner's criminal liability was under a gross negligence standard, which applies an objective standard, "whether a reasonable person in [Petitioner's] position would have been aware of the risks involved." *Id.* at 345 (internal citations

omitted).  Therefore, even if Petitioner believed he was not impaired when he operated his vehicle, "the jury could still convict him for gross negligence if the jury believed a reasonable person would have appreciated the risk.  *Id*. at 347-48 (internal citations omitted).

Similarly, for the charges of driving under the influence and causing bodily injury, and driving with an excessive blood-alcohol level causing injury, Petitioner's "subjective intent or belief about his impairment was not a necessary element for conviction."

Based on the foregoing, a mistake of fact could not have "absolved" Petitioner of this charges.  Therefore, Petitioner cannot prove he was prejudiced by the Court's failure to give the mistake of fact jury instruction.

Further, the Court of Appeal reasonably determined that the constitutional error in failing to give the instruction, if any, was harmless.  The jury was instructed to consider whether defendant committed gross negligence in light of his alleged mistake.  *Givan*, 233 Cal. App. 4th at 348. Therefore, the jury could consider Petitioner's argument that he did not know he was intoxicated. Because Petitioner cannot show "a substantial and injurious effect," it was not unreasonable for the Court of Appeal's to reject Petitioner's claim.  For these reasons, the Court recommends rejecting Petitioner's claim.

## IV.      The State Court Did Not Err in Denying Petitioner's Ineffective Assistance of Counsel Claims

In his second ground for habeas relief, Petitioner alleges defense counsel was ineffective (1) during sentencing and (2) because he failed to move to suppress a blood draw.  (Doc. 1 at 8-9.) Petitioner also maintains his appellate counsel was ineffective for failing to argue ineffective assistance of counsel on appeal.  *Id*.  Respondent counters that the state court was not objectively unreasonable in concluding that counsel was not ineffective.  (Doc. 17 at 18-26.)

14

## A.  Standard of Review for Ineffective Assistance of Counsel Claims

The purpose of the Sixth Amendment right to counsel is to ensure that the defendant receives a fair trial.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  "[T]he right to counsel is the right to effective assistance of counsel."  *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970).  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland*, 466 U.S. at 686.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his trial counsel's performance "fell below an objective standard of reasonableness" at the time of trial and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 688, 694.  The *Strickland* test requires Petitioner to establish two elements: (1) his attorneys' representation was deficient and (2) prejudice to Petitioner.  Both elements are mixed questions of law and fact.  *Id.* at 698.

These elements need not be considered in order.  *Id.* at 697.  "The object of an ineffectiveness claim is not to grade counsel's performance."  *Id.*  If a court can resolve an ineffectiveness claim by finding a lack of prejudice, it need not consider whether counsel's performance was deficient.  *Id.*

## B.  Counsel Was Not Ineffective During Sentencing

Petitioner claims both trial and appellate counsel were ineffective for failing to argue that the Court sentenced him incorrectly because Petitioner's prior convictions cannot constitute multiple strikes under the California Three Strikes Law.  (Doc. 1 at 8.)  At trial, the prosecutor alleged and it was found true that Petitioner suffered four prior strikes in 1998 that qualified as strikes under the California Three Strikes law.  (Lodged Doc. 23 at 9.)  Petitioner states these four prior strikes should have counted as one single strike; therefore, he would not qualify under the

California Three Strikes law. *Id.*

## 1. **State Court Opinion**

Considering Petitioner's petition for writ of habeas corpus, the Kern County Superior Court held:

> Petitioner contends that his sentence is excessive under *People v. Vargas* (2015) 59 Cal.4th 635. In *Vargas*, the California Supreme Court held that prior convictions which fell under the same operative facts were to be treated as one strike, *Vargas at 646*. The court used a baseball analogy stating that a defendant cannot be convicted of two strikes with one swing of the bat. *Id.*
>
> Petitioner fails to state how the June 29, 1998 conviction stemmed from the same set of operative facts. However, the nature of the convictions and enhancements present the possibility that Petitioner may be correct. Even assuming they should only constitute one prior strike under *Vargas*, Petitioner suffered an assault with firearm conviction on October 31, 1996, which is separate from the 1998 convictions. Combined with Petitioner's present conviction, one 1996 and one 1998 conviction would result in the imposition of the identical sentence Petitioner is serving presently. Furthermore, counsel filed a Romero motion to strike these convictions under *People v. Superior Court Romero (1996) 13 Cal.4th 497*, 530. This motion was argued on the day of sentencing and denied. *People v. Williams* (1998) 17 Cal.4th 148, 161.
>
> . . .
>
> To prevail in a claim of ineffective assistance of counsel, Petitioner must demonstrate that counsel's conduct fell below professional norms causing prejudice, which in its absence, would create a probability of a change in the outcome. *Strickland v. Washington* (1984) 466 U.S. 668, 694. This court has indicated the reasons why tr[ia]l counsel is not ineffective and why Petitioner fails to prevail on this ground. Appellate counsel is not ineffective as he need not raise meritless grounds on appeal in the vein hopes that they may prevail. *In re Robbins* (1998) 18 Cal.4th 770, 810, *Knowles v. Mizayance* (2009) 556 U.S. 173. Petitioner is entitled to adequate, not perfect counsel. *People v. Jackson* (2009) 45 Cal.4th 662, *People v. Smith* (1993) 6 Cal.4th 684, 696.

*In Re Damarcas Givan*, No. HC14835A (Cal. Super. Ct. Dec. 7, 2015), at 3-4.

## 2. **Trial Counsel Was Not Ineffective at Sentencing**

Petitioner maintains that his trial counsel was ineffective for failing to challenge his sentence. Petitioner claims his 1998 convictions should have counted as one strike, rather than multiple strikes. However, even if his 1998 convictions counted as one strike, Petitioner also had

16

a strike from a 1996 conviction. Consequently, the state court determined that Petitioner qualified for California's Three Strikes law based on his 1996 and 1998 convictions, and the convictions which form the bases of this petition.[4] Therefore, even if the Court found Petitioner's 1998 conviction counted as one strike, counsel would not have been able to successfully challenge his sentenced because he still qualified under the California Three Strikes law. "Failure to raise a meritless argument does not constitute ineffective assistance of counsel." *Boag v. Raines*, 769 F.3d 1341, 1344 (9th Cir. 1985) (citing *Cooper v. Fitzharris*, 551 F.2d 1162, 1166 (9th Cir. 1977)); *see also Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) ("[T]he failure to take a futile action can never be deficient performance."). Because Petitioner's claim is meritless, the Court recommends denying Petitioner's ineffective assistance of trial counsel claim.

### 3. <u>Appellate Counsel Did Not Have a Duty to Incorporate Petitioner's Claim</u>

Similarly, a defendant's right to appellate representation does not include a right to present frivolous arguments to the court. *McCoy v. Court of Appeals of Wis., Dist. 1*, 486 U.S. 429, 436 (1988). An attorney is "under an ethical obligation to refuse to prosecute a frivolous appeal." *Id.* Further, no U.S. Supreme Court decision holds a "defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

Appellate counsel cannot be found ineffective for failing to raise an argument that would not have been successful. *Morrison v. Estelle*, 981 F.2d 425, 429 (9th Cir. 1992). Petitioner's argument would not have been successful because the court found Petitioner suffered three strikes whether or not his 1998 conviction counted as more than one strike. For these reasons, the Court

---

[4] "It is not the province of a federal court to reexamine state court determinations of state law questions." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991).

recommends denying Petitioner's ineffective assistance of appellate counsel claim.

### C. Counsel Was Not Ineffective for Failing to Suppress the Blood Draw

After the accident, Petitioner's blood was drawn without a warrant to test his blood-alcohol level. *Givan*, 233 Cal. App. 4th at 340-41. Petitioner alleges both trial and appellate counsel were ineffective for "fail[ing] to move to suppress a non-consensual blood draw that was seized in violation of [P]etitioner's [F]ourth [A]mendment [rights]." (Doc. 1 at 9.) Petitioner relies on the U.S. Supreme Court's decision in *McNeely v. Missouri*, 569 U.S. 141 (2013), in which the Supreme Court held "the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." *Id*. at 165.

#### 1. State Court Opinion

Generally, illegal search and seizure claims are not cognizable in habeas corpus. *In re Harris* (1993) 5 Cal.4th 813, 830. In the context of ineffective assistance of counsel, the court will examine the viability of Petitioner's claim. In *Missouri v. McNeel[ ]y* (2013) 133 S.Ct. 1552, the U.S. Supreme Court held that normal metabolizing of alcohol per se is not alone an exigent circumstance to order a warrantless blood test. In California, officers previously were allowed to undertake warrantless blood tests where there was fear of destruction of evidence, along with metabolizing of alcohol through the blood stream. *Schmerber v. California* (1966) 384 U.S. 757, 760.

Petitioner contends the facts in McNeel[ ]y are similar to those he faced in his conviction and there was ample time to obtain a warrant for the blood test. Counsel was negligent in failing to file a motion to suppress the blood test. Petitioner fails in this argument for the following reasons. First, *Missouri v. McNeel[ ]y* was not decided until after Petitioner's conviction and sentence. Thus, trial counsel could not argue the application of *Missouri v. McNeel[ ]y* to suppress the blood test due to the absence of exigent circumstances. Second, there were exigent circumstances in Petitioner's case which, under the *Missouri v. McNeel[ ]y* holding, would have supported the blood draw. Those circumstances included the fact that Petitioner was in no condition to consent to a blood test due to his intoxication and injuries. Second, there were serious injuries to Tom and Laura Fulce. Laura succumbed to her injuries. Under the totality of the circumstances, the warrantless blood test was proper. This was not a routine drunk driving stop as outlined under the facts in *Missouri v. McNeely at 1559*.

*In Re Damarcas Givan*, No. HC14835A, at 2-3.

## 2.  Trial Counsel Was Not Ineffective for Failing to Suppress Petitioner's Blood Draw

Petitioner maintains that his trial counsel was ineffective for failing to suppress the blood draw evidence.  Petitioner's argument relies on the Supreme Court's decision in *McNeely*.  However, Petitioner's case was decided prior to the decision in *McNeely*.  At the time Petitioner was convicted, California officers could conduct warrantless blood tests where there was a fear that alcohol would be metabolized in the blood stream.  *Schmerber v. California*, 384 U.S. 757, 771 (1966).

In his petition for writ of habeas corpus before the state court, Petitioner acknowledged that *McNeely* was decided while his case was pending on direct appeal and prior to *McNeely*, "California courts adopted a rule that the natural metabolization of alcohol in [the] bloodstream presented a per se exigency that justif[ied] an exception to the Fourth Amendment's warrant requirement for non-consensual blood testing in all drunk driving cases." (Lodged Doc. 23 at 4.)  However, Petitioner contends trial counsel should have argued that the blood draw violated his constitutional rights.

Trial counsel did not have reason to move to suppress the blood draw evidence in this case, because the motion would have been denied based on then existing law.   At the time of Petitioner's arrest, *Schmerber* was the controlling authority and it permitted warrantless blood draws in driving under the influence investigations.  384 U.S. 757.  During the period between the *Schmerber* decision and *McNeely*, "California cases uniformly interpreted *Schmerber* to mean that no exigency beyond the natural evanescence of intoxicants in the bloodstream, present in every DUI case, was needed to establish an exception to the warrant requirement." *People v. Jimenez*, 242 Cal. App. 4th 1337, 1362 (2015) (internal citations and quotations marks omitted).  Consequently, any motion to suppress the blood draw evidence would have been properly denied by the trial court and "[f]ailure to raise a meritless argument does not constitute ineffective assistance of counsel." *Boag*, 769 F.3d at 1344 (citing *Cooper*, 551 F.2d at 1166).  Further, the failure of trial counsel to predict a change

in then-established Ninth Circuit law was not objectively unreasonable.  *See Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994) (finding counsel was not ineffective because a "lawyer cannot be required to anticipate our decision" in a later case).

Petitioner also fails to establish prejudice.  If trial counsel made a motion to suppress the blood draw evidence, it would have been denied based on then-established Ninth Circuit law.  Because counsel's conduct was not unreasonable and Petitioner did not suffer any prejudice, the Court recommends denying Petitioner's claim.

### 3. Appellate Counsel Did Not Have a Duty to Incorporate Petitioner's Claim

Petitioner also contends that his appellate counsel was ineffective for failing to make an ineffective assistance of counsel claim against Petitioner's trial counsel, because trial counsel failed to make a *McNeely* argument.  Appellate counsel is not ineffective for failing to raise an argument that would not have been successful.  *Morrison*, 981 F.2d at 429.  Petitioner's argument would not have been successful because it was not ineffective for trial counsel to fail to predict a future change in the law.  For these reasons, the Court recommends denying Petitioner's ineffective assistance of appellate counsel claim.

## V. Certificate of Appealability

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances.  *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a)  In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

> (b)  There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such

20

person's detention pending removal proceedings.

       (c)    (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

           (A)  the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

           (B)  the final order in a proceeding under section 2255.

           (2)  A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

           (3)  The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief to be debatable or wrong, or conclude that the issues presented required further adjudication. Accordingly, the Court recommends declining to issue a certificate of appealability.

**VI.**    <u>**Conclusion and Recommendation**</u>

Based on the foregoing, the undersigned recommends that the Court deny the Petition for writ of habeas corpus with prejudice and decline to issue a certificate of appealability.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C § 636(b)(1). Within **thirty (30) days**

after being served with these Findings and Recommendations, either party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections, if any, shall be served and filed within **fourteen (14) days** after service of the objections. The parties are advised that failure to file objections within the specified time may constitute waiver of the right to appeal the District Court's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 ((9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 23, 2018**                     /s/ *Sheila K. Oberto*

UNITED STATES MAGISTRATE JUDGE